UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
FILED
NOV 30 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-64-GWU

SAMUEL NEW, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB. The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

New

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

New

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

New

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

New

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Samuel New, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of lumbar and cervical spine impairments with chronic back, neck, and leg pain, and "major depression, single, without psychotic features." (Tr. 18). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. New retained the residual functional capacity to perform a significant number of jobs existing in the economy and, accordingly, was not entitled to benefits. (Tr. 21-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of medium level exertion, and also had the following non-exertional impairments. (Tr. 421). He: (1) could occasionally climb ladders, ropes, and scaffolds; (2) could do no more than frequent stooping or crawling; and (3) had a "moderately limited" ability to understand, remember, and carry out detailed instructions, complete a normal workday and workweek without interruptions, interact appropriately with the general public, maintain socially appropriate behavior and respond appropriately to changes in the work setting. (Tr. 421-2). The VE responded that there were jobs that such a person could perform, and proceeded

7

New

to give the numbers in which they existed in the regional and national economies. (Tr. 422-3).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability due to constant back, neck, and leg pain, and nervousness. (Tr. 64, 399-400).

The plaintiff raises only one issue on appeal, arguing that the ALJ committed error in his treatment of restrictions given by Dr. Joseph Rapier, a one time examiner. Dr. Rapier examined the plaintiff on September 30, 2003, but had few prior records available apart from MRI scans of the back and neck from September and October, 2002. (Tr. 319). His examination showed that the plaintiff had some muscle spasm in the lower back but none in the neck, and that he could bend forward 50 degrees at the waist, flex his neck to 50 degrees and rotate it to 60 degrees on each side, and walk on his toes and heels albeit with complaints of back pain; he was observed to have normal reflexes and sensation. (Tr. 318). Dr. Rapier interpreted the MRI reports as showing mild degenerative changes and mild bulging, but no obvious neurological impingement. (Tr. 319). He opined that the plaintiff should "probably" be limited to lifting "around 20 pounds and regular lifting 10 pounds or less," should not be engaged in "repetitive frequent bending, lifting,

8

turning, and twisting," and that he should "probably" have a sit/stand option and avoid vibration, jars, and jolts. (Tr. 321).

Clearly, these restrictions, particularly in regard to lifting, were greater than found by the ALJ. The plaintiff argues that the ALJ essentially based his functional capacity findings on the opinions of non-examining state agency reviewing sources (Tr. 225-35, 281-7), who rendered their opinions prior to the receipt of Dr. Rapier's report. The plaintiff asserts that there is "persuasive authority" from the Second Circuit Court of Appeals that a non-examining source opinion does not constitute substantial evidence to support an ALJ's decision if it was based on incomplete medical records. Pratts v. Chater, 94 F.3d 34 (2d Cir. 1986).

However, in the present case, there is a large amount of evidence from other examining sources, including an apparent treating source, which supports the ALJ's decision.

Dr. Brett Scott, a neurosurgeon, examined the plaintiff on at least two occasions in late 2002, following an initial evaluation by one of his medical associates, Dr. James Bean, another neurosurgeon. (Tr. 184-7). Neither Dr. Scott nor Dr. Bean could find any motor, sensory, or reflex abnormalities, and Dr. Scott reviewed both the lumbar spine MRI and ordered the cervical spine MRI cited by Dr. Rapier. (Tr. 184-5). He also obtained other tests such as a sedimentation rate, which was normal. (Tr. 182). Dr. Scott concluded that the plaintiff had chronic mechanical neck and low back pain consistent with lumbar strain and lumbar

spondylosis, and was not a candidate for surgery. (Tr. 182). He suggested that the plaintiff consult with a pain management specialist. (Id.). Another neurosurgeon, Dr. Russell Travis, examined the plaintiff in December, 2002, and reviewed records from Dr. Bean, Dr. Scott, the MRI reports, physical therapy reports, and x-rays. (Tr. 191-3). He noted that the plaintiff had no visible muscle spasm, normal reflexes, a "bizarre non-dermatomal response to pinprick," and had a "dramatic" antalgic gait when examined in the office, but was observed walking normally in the parking lot to his car. (Tr. 191). When asked to perform lumbar flexion, he would bend no further than his hands to his upper thigh, but when recumbent, he sat up at a 90 degree angle to remove his socks. (Id.). Dr. Travis gave his impression as "complaints of pain but no objective findings," and added that his lumbosacral MRI showed no more changes than those which would be seen in eighty percent of the asymptomatic population in his age range. (Tr. 194). He interpreted the cervical MRI as "entirely normal." (Id.). The patient did exhibit considerable symptom magnification, however. Dr. Travis recommended that the plaintiff return to medium work activity immediately and, after three weeks, return to his "full and normal" work activity. (Id.). Very similar inconsistent findings were noted by Dr. Ellen Ballard, a pain management specialist, who examined the plaintiff in April, 2003, and who also had prior records available for review. (Tr. 237-8). Dr. Ballard's impression was a history of intermittent neck and back pain complaints, but she concluded that, based

on the history and physical examination, while the plaintiff may have had a strain, it should have resolved. (Tr. 240). She did not recommend further treatment.

The only other physician who suggested functional restrictions was Dr. Franklin Belhasen, who stated in January, 2003, that he could not approve a return to the plaintiff's former job after reviewing the job description. (Tr. 202). It is not clear what job description the physician reviewed, but Mr. New testified at the administrative hearing that he drove a "rock truck," and sometimes performed mechanical work which involved heavy lifting. (Tr. 397-`8). Formerly, he had been a general laborer in coal mining, which also involved heavy exertion. (Tr. 398). In any case, Dr. Belhasen stated that he did not feel the plaintiff was "physically qualified for any job in the coal mining industry." (Tr. 202). The ALJ rejected the statement as a conclusion which was reserved to the Commissioner. Whatever may be said about that particular rationale, the physician's opinion was essentially that the plaintiff could not return to any job involving heavy exertion, which was consistent with the ALJ's findings. There is no indication in Dr. Belhasen's report that the plaintiff could not perform a less strenuous job.

After reviewing this evidence, and other brief evidence from family physicians, the state agency reviewers gave the functional restrictions accepted by the ALJ and presented to the VE in the hypothetical question. Under the circumstances, Dr. Rapier's report was not critical to the determination. As a one-time examiner without access to the entire record, he was not entitled to special deference. See, e.g., Yer

New

Her v. Commissioner of Social Security, 203 F.3d 388, 390 (6th Cir. 1999); Atterberry v. Secretary of Health and Human Services, 871 F.2d 567, 572 (6th Cir. 1989). See generally 20 C.F.R. Section 404.1527(d). In fact, Dr. Rapier was less well placed than Dr. Travis, who had access to more records, and concluded that the plaintiff had no permanent restrictions at all.

The Court concludes that the administrative decision is supported by substantial evidence, and will be affirmed.

This the ___30___ day of November, 2005.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE